GILLESPIE, Chief Justice:
The State Oil and Gas Board of Mississippi (Board), Getty Oil Company (Getty), and Shell Oil Company (Shell) appealed from a judgment of the Circuit Court of Wayne County reversing an order of the Board granting Getty a permit to drill a wildcat gas well on a drilling unit of 640 acres.[1]
Getty owns oil and gas leases on extensive acreage in the southeast corner of Wayne County. Shell also owns leases m the area and is supporting the proposed gas well in which it will have a working interest if it produces. Getty applied to the Board for a wildcat gas drilling permit on a governmental section of 640 acres. Due notice was given as required by Rules of the Oil and Gas Board, Statewide Rule 8(5), which provides, “No permit for the drilling of a wildcat well on a gas drilling unit shall be issued unless granted by the Board after notice and hearing.” H. L. Crane and Nolan Clark contested the application, a full hearing was held, and the Board established and approved the 640 acres as a wildcat gas drilling unit. Crane and Clark appealed to the circuit court where the order of the Board was reversed as to Crane and Clark. The order was otherwise affirmed. The circuit court found that the Board’s order was not supported by substantial evidence and stated that no seismic or geological evidence was offered by Getty showing that the particular location of the proposed well was any better than any other location within the larger drilling block controlled by Getty, and that the only purpose served by granting the permit was to extend Crane’s lease beyond its primary term.
The proof shows that Getty proposed to drill to a depth of more than 20,000 feet in an attempt to produce gas in the Smackover and Norphlet sands. The Smackover will probably be encountered at about 20,-000 feet and the Norphlet at about 21,000 feet. The proposed location is in the Smackover trend. In the last four years sixteen wells have been drilled in the general area below 16,000 feet, these wells ranging from approximately ten to more than twenty miles in all directions from the proposed site. Of these sixteen wells, two lying south and southeast of the proposed site produced gas in the Norphlet formation, and one well about twelve to *86 fifteen miles to the east near the approximate updip limits of the deep Smackover trend produced gas from the Smackover sands. Two of the sixteen wells lying northwest of the proposed site produced oil from the Smackover at levels between 15,000 and 16,000 feet, eight of the wells were dry holes, but several had shows of gas, and three were in the process of drilling. Temperatures increase with depth and in the bottom of wells drilled to a depth of 20,000 feet the temperature range is from 325 to 350 degrees. Under such pressure and temperatures, a gaseous reservoir rather than liquid is probable. No oil has been produced in the State of Mississippi at a depth of more than 17,500 feet. These facts' were established by the testimony of Getty’s geologist, corroborated to some extent by the geologist who testified for Crane and Clark.
The cost of drilling the proposed well would be about two million dollars unless difficulties are encountered that would increase the cost.
Crane is the owner of 121.5 acres of land in the proposed drilling unit on which Getty has an oil and gas lease with an expiration date of September 13, 1971, and Clark has a “top lease” on the Crane tract beginning September 13, 1971. There is one other 65-acre tract in the proposed drilling unit leased to Getty with the primary term expiring in September 1971. The proposed well site is not located on either of these tracts. The lease from Crane to Getty provides that the lessee has the right to pool the acreage in a unit according to lawful spacing rules and that the lease would be extended past the primary term as long as drilling is in progress on land pooled with the acreage embraced in the lease.
The question is whether the circuit court erred in reversing the order of the Board establishing the drilling unit. It has the following points of inquiry: (a) Was it essential to the validity of the Board’s order that Getty offer evidence of seismic studies showing the underground structures ? (b) Did the fact that the Crane lease would be extended beyond its primary term affect the validity of the Board’s order ?
The principal argument of Crane and Clark is that because Getty failed to offer evidence of seismographic studies showing the underlying structures that would probably produce gas, the order was not supported by substantial evidence. No such evidence was offered by Getty, although the evidence was ample for the Board to find that the Smackover formation would be encountered at approximately, 20,000 feet and the Norphlet at about 21,000 feet, and at those depths production of gas was more probable than the production of oil. It is also argued that because of the inclusion in the drilling unit of the Crane property, the only purpose for the selection of this particular drilling unit by Getty was to extend the Crane lease beyond its primary terms. Crane and Clark contend that in effect the Board is being used to protect Getty’s lease and this invalidates the order establishing the drilling unit. Getty’s landman testified that the extension of these two leases that expire in September 1971 was one, but not the primary, reason for the particular location.
 This Court has repeatedly stated that the standard for judicial review of orders of the State Oil and Gas Board is limited to determining whether the order is supported by substantial evidence, is arbitrary or capricious, is beyond the power of the Board to make, or violates some constitutional right of the complaining party. Superior Oil Co. v. State Oil and Gas Board, 220 So.2d 602 (Miss. 1969). We are of the opinion that proof of the information obtained by Getty through geophysical procedures concerning underground structures was not necessary to the validity of the order establishing the drilling unit. Getty had the right to select the location of the well subject to rules and orders of the Board, and it was not necessary for Getty to show that the proposed location *87 was geologically preferable to some other drilling location.
It is earnestly contended by Crane and Clark that Getty had fifteen or sixteen sections of land under lease, including the Crane tract, and waited for years until the Crane lease was about to expire before applying for a permit on a unit that included the Crane tract, and that the effect was to use the Board to further Getty’s eccr-nomic interest by extending the Crane lease beyond its primary term. The proof showed that Getty had spent large sums of money in preparing to drill an exploratory well in the larger drilling block of about fifteen or sixteen sections, and that work had been in progress in this drilling area for about three years. The question whether pooling just prior to the expiration of the primary term is a valid exercise of lessee’s right is discussed in Williams, Oil and Gas Law, Vol. 4, section 670.2 (1962), wherein it is stated that “[I]n many instances, of course, pooling of leased premises with other premises does take place toward the end of the primary term. Certainly in most instances of that kind there is no reason of complaint by the lessor.” However, all the cases cited involve suits to cancel the lease, and are not particularly helpful except to show that the Board is not the forum to decide any contest between Crane and Getty concerning Getty’s exercise of the pooling power.
The question whether Getty dealt fairly with lessee Crane was not before the Oil and Gas Board because that Board could not determine that equitable question.
The circuit court erred in holding that there was no substantial evidence to support the order of the Board. We hold that the Board’s order establishing the drilling unit was based upon substantial evidence that the well was proposed to be drilled to a depth of 20,000 to 21,000 feet, at which depth the Smackover and Norphlet formations would be encountered, and any hydrocarbons discovered at that depth would probably be in gaseous form because of the pressure and temperature encountered at these depths. In our opinion, there was no showing that the Board’s order was arbitrary or capricious or deprived Crane of any constitutional rights. Therefore, the judgment of the circuit court is reversed and the order of the Board is reinstated.
ON MOTION TO DISMISS
Getty and Shell filed a motion in the circuit court to strike the transcript and to dismiss the appeal on the ground that the Board adjourned the meeting at which the order involved in this case was entered on April 22, 1971, and that the notice to the court reporter was not given until May 4, 1971, which was beyond the ten days provided by statute; and that the appeal was not perfected by giving bond until May 28, 1971, which was beyond thirty days from the date of the Board’s adjournment.
It is not clear from this record when the Board actually adjourned its meeting. As far as the record shows a litigant could not determine when his case was concluded or how it was determined until the order appeared on the Minute Book, which was May 7, 1971. Notice to the reporter was given within ten days from May 7, and the appeal was perfected within thirty days from that date. This Court, consistent with the decision in Masonite Corporation v. State Oil & Gas Board, 230 So.2d 806 (1970), declines to hold that the transcript in this case should be stricken or the appeal dismissed because litigants should not have their statutory right to appeal to rest upon the ambiguous condition of the record as to when the Oil and Gas Board entered the order and adjourned its meeting. The motion to dismiss the appeal was correctly overruled by the circuit court.
Motion to dismiss appeal overruled; judgment of Circuit Court reversed, and order of Board reinstated.
JONES, SMITH, SUGG and BROOM, JJ., concur.

. Oil and Gas Board Rule 8 provides for gas drilling units of 640 acres at depths below 12,000 feet. This case does not involve the validity of this spacing rule. See State Oil and Gas Board v. Mississippi Mineral & Royalty Owners’ Ass’n, 258 So.2d 767 (Miss.1971).