SMITH, Justice, for the Court:
This appeal comes to the Court from the Chancery Court of Jackson County, Mississippi, asking this Court to apply federal and state constitutional due process interpretation to a state administrative body’s hearing process. This Court is also asked to find that the lower court lacked venue of this matter.
Pursuant to statute, in 1989 the Mississippi Commission on Environmental Quality (Commission) initiated proceedings to adopt a regulation, i.e. an ambient water quality standard for dioxin. Following three informational gathering public hearings, the Commission met in 1991, and a standard was adopted. In response, Parker et al., appel-lees herein, (Parker) filed a request for a formal hearing seeking to determine how the Commission reached its water quality standard for dioxin. An order denying the request was issued. Parker filed a notice of appeal to the Chancery Court wherein that court entered an order on May 28, 1992, *925 remanding the case for a hearing as requested.
After careful consideration of the parties’ briefs and positions presented during oral argument before this Court, we are of the opinion that the chancery court was correct in determining the appellants were entitled to a “full and complete evidentiary hearing” in this cause and thereby reversing the Commission. The argument of the Commission is essentially the same position that they took in Save the Bay, Inc. v. Mississippi Air and Water Pollution Control Commission, 341 So.2d 98 (Miss.1977). The Commission’s position that it has already conducted three public, informational hearings thus satisfying the requirements of § 49-17-41 Miss.Code Ann. (1972), is in total contravention of the opinion of this Court in Save The Bay.
In a case with closely analogous facts, this Court holds that the three public hearings held by the Commission were conducted solely for the purpose of permitting all interested citizens to publicly express their views and was not a hearing as contemplated by § 49-17-41. Neither is the requirement of due process satisfied by such informational gathering hearings. Due process is only satisfied by a formal, full and complete evidentiary hearing as contemplated by § 49-17-41 and this Court in its opinion in Save The Bay.
It cannot be said that the chancellor was in error in finding that the situs in this case was “the waters of the state”, thus allowing for proper venue in Jackson County.
The decision of the chancellor is affirmed.

THE FACTS

It is the declared purpose of the Mississippi Department of Environmental Quality (DEQ) to “conserve, manage, develop and protect our natural resources and wild-life_” Miss.Code Ann. § 49-2-1 (1972). Section 49-17-1, et. seq., governs specifically the pollution of waters, streams and air in this state. In order to carry out their provisions, § 49-17-19(a) authorizes the Commission to “set ambient standards of air and water quality for the state or portions thereof.” Subsection (b) further provides as follows:
(b) Prior to establishing, amending or repealing standards of air and water quality, the commission shall, after due notice, conduct public hearings thereon. Notice of public hearing shall specify the areas or waters for which standards are sought to be adopted, amended or repealed and the time, date and place of such hearing. Such notice shall be given by publication once a week for three successive weeks in a newspaper published in Hinds County and in a newspaper published or having a general circulation in each county in the area affected or in which the waters to be affected may be situated, and by mailing notice to all county and municipal officials in the counties and municipalities affected, as well as to all persons and agencies who have had their names placed on the mailing list of the commission.
Pursuant to the provisions stated above, the Commission in early 1991 began the process of establishing a state-wide water quality standard for the chemical 2,3,7,8-tetra-chlorodibenzo-p-dioxin, commonly known as “dioxin.” The Commission states this substance is often associated with the operation of certain paper mills, wood treating operations and other industrial activities. Pursuant to the requirements of § 49-17-19(b), three public hearings were scheduled and conducted. Notice containing the purpose, location, time and date, and other relevant information was published in approximately twenty newspapers across the state, most for 4 consecutive weeks. The same notices were also mailed to the mayors of 270 cities and to all persons or companies who requested they be placed on the Commission’s mailing list pertaining to this issue.
The record indicates the first public hearing was held on January 29, 1991, beginning at 7:00 p.m. on the campus of Mississippi State University, Starkville, Mississippi. This meeting was brought to order by Charles Chisolm, Director of the state pollution control office, a division of the DEQ. Chisolm explained to the attendees that the purpose of the hearing was twofold: “One obviously is to adopt a dioxin criteria for statewaters and the proposed criteria is .1 ppq.” The other issue concerned bacteria *926 standards for fish and wildlife waters. The attendees at this initial hearing were encouraged to submit evidence, make statements, written or oral, and were informed that a decision on the matter by the Commission would come no sooner than the next regularly scheduled meeting — February 28, 1991. The sites of the next two public hearings were also announced. Following prepared statements by six speakers, Chisolm asked whether any member of the audience wished to speak. Hearing no responses, the meeting was adjourned.
The second hearing was held on January 30, 1991, at the Ramada here in Jackson. The transcript notes approximately sixty people attended. Introductory remarks were made by CEQ Commissioner Dan McDaniel, after which Charles Chisolm again conducted the hearing. Seventeen persons made statements, some of whom had also appeared at the first meeting. Again, Chi-solm informed the hearing’s attendees that the “establishment of a State Water Quality Criteria for dioxin is obviously an important part of the proceeding.”
The third and final public hearing was held on January 31, 1991, at the Royal D’Iberville Hotel in Biloxi, Mississippi. The transcript notes approximately 600 people were present. Introductory remarks were made by two members of the CEQ, Dan McDaniel of Jackson, and Gale Singley of Pascagoula and Moss Point. The Commissioners stated that the purpose of the meeting was to “set a Water Quality Standard [for] ... dioxins and certain other chemicals” and “to listen, gather information, assimilate this information and use it in our process of decision making, as to what our dioxin levels, acceptable levels, for the State of Mississippi waters will be.” At this hearing, approximately thirty persons made statements, some of whom had spoken at the previous nights’ meetings. Again, anyone in attendance and not previously scheduled to speak was given the opportunity, after which the meeting was adjourned.
Following these public hearings, the Commission met for its next regularly scheduled meeting on March 28, 1991 at which time a standard of 1.0 ppq, or the equivalent of the EPA’s risk level of one additional case of cancer in one hundred thousand persons exposed was adopted. A full transcript of the commissioners’ concerns and comments during their deliberations on an acceptable standard is also present in the record.
Thereafter, Parker and the other 2,700 individual appellees requested a proper hearing contesting the Commission’s action and seeking to determine how the Commission reached its water quality standard for Dioxin. The request was denied and Parker’s appeal to this Court followed.
Following the denial of the Commission’s motion to dismiss Parker’s appeal, each of the three appellant/eompanies then filed motions to intervene which were granted on January 17, 1992. By order dated May 28, 1992, the lower court granted Parker a “full and complete evidentiary hearing” on the water quality standard for dioxin as requested. The Commission and other appellants instituted their appeal to this Court on June 1, 1992.

DISCUSSION

Appellants raise two issues on direct appeal, framed as follows:
I. WHETHER THE CHANCERY COURT ERRED IN REMANDING THIS ACTION TO THE CEQ FOR AN ADDITIONAL HEARING WHEN THE CEQ HAS ALREADY HELD THREE PUBLIC HEARINGS, AT WHICH SOME OF THE PETITIONERS TESTIFIED, REGARDING MISSISSIPPI’S ADOPTION OF AN AMBIENT WATER QUALITY STANDARD FOR DIOXIN.
II. THE LOWER COURT LACKED VENUE OF THIS MATTER.
I.
The Commission’s argument in its simplest terms is that the appellees have had their chance to be heard on the adoption of a water quality standard for dioxin and are not entitled to more. It is submitted that the public notice and hearing requirements of § 49-17-19(b) were satisfied when the Commission in 1991 held three information gathering public hearings on this subject. There *927 is no question raised by Parker that notice of these hearings failed to comply with the provisions of § 49-17-19(b). The hearings appear to have been well attended and the majority of the persons making statements were well prepared. The Commission states:
Petitioners [Parker, et al] rely on one statutory provision to support their allegation that they are entitled to an additional hearing. That statute expressly states, however, that Petitioners are not entitled to an additional hearing if a “hearing on the same subject matter” has already been held. Three public hearings were previously held on the same subject matter. Petitioners have no basis for their contention that these prior hearings did not fulfill their statutory right to a hearing.
Parker’s position before this Court is equally simple. The appellees contend that in denying the requested additional hearing, the Commission violated the mandates of § 49-17 — 41, which provides as follows:
In addition to any other remedies that might now be available, any person or interested party aggrieved by any order of the commission or the executive director shall have a right to file a sworn petition with the commission within thirty days after the order was issued setting forth the grounds and reasons for his complaint and asking for a hearing of the matter involved, provided that no hearing on the same subject matter shall have previously been held before the commission or its designated hearing officer. The commission shall thereupon fix the time and place of such hearing and shall notify the petitioners thereof.
* * * At such hearings the petitioner, and any other interested party, may offer, present witnesses and submit evidence.
Following such hearing, the final order of determination of the commission upon such matters shall be conclusive, unless the petitioner, or such other interested party appearing at the hearing, shall, within fifteen (15) days after the adjournment of the meeting at which said final order was made, appeal to the chancery court of the county where the hearing was held, or of the situs in whole or in part of the subject matter of the hearing....
Parker contends the request for a formal hearing before the Commission “concerned the actions and behavior of a state agency (Commission) and the manner in which said Commission carried out its duties, obligations, and statutory mandates.” He specifically argues the appeal dealt with “the arbitrary and capricious manner in which the C.E.Q. adopted the Dioxin Standard.” Finally, in direct response to the Commission’s arguments to this Court, Parker makes clear that he does not deny that the three public, information-gathering hearings were properly conducted or that he and other appellees were in attendance. Parker states:
However, this fact finding mission by the C.E.Q. is not directly at issue or in dispute in the instant case. Appellees did not contend that the C.E.Q. failed in its duty to properly conduct fact finding hearings.
Appellees complained and sought relief as to how the Commission evaluated and utilized the facts after the public hearings were concluded.
At the center of this controversy is the case of Save the Bay, Inc. v. Mississippi Air and Water Pollution Control Commission, 341 So.2d 98 (Miss.1977).
In ordering that Parker was entitled to an additional hearing, the chancellor stated:
Able argument was made to distinguish the case sub judice from Save the Bay, but this Court is of the opinion that Appellants are entitled to, and hereby are, granted a full and complete evidentiary hearing before the Commission on Environmental Quality as due process and a simple right to an opportunity to be heard would afford under the statutory and Constitutional protections of the law. The Commission on Environmental Quality is further ordered to make a full record of the testimony and hearing which shall be conducted with the full rights available under law. Said hearing is to be held within thirty (30) days of entry of this Order. Within said thirty (30) day period, all Parties may file petitions or other necessary documents to define and narrow the issues to be heard *928 before the Mississippi Commission on Environmental Quality.
In Save the Bay, the DuPont Company filed an application for a permit to discharge waste water into the St. Louis Bay in connection with a proposed plant to be constructed in DeLisle, Mississippi. Id. at 99. Following receipt of the application, the Permit Board of the Mississippi Air and Water Pollution Control Commission (Commission) conducted an investigation including the holding of one discretionary public hearing on the matter. The notice stated the hearing’s purpose was discussion of the proposed waste water discharge permit, and invited comments from the public. Following the hearing, the requested permit was issued by the Permit Board approximately 2 weeks later. In response, the appellants petitioned the Commission for a hearing “on the question of the issuance of the waste water discharge permit to DuPont.” Id. When the Commission took no action, appellants appealed to the Harrison County Chancery Court. In its final decree, that court affirmed the issuance of the permit.
This Court on appeal first tackled the question of “whether applicants were granted a hearing by the Commission as provided by section [49-17-]41, or stated differently, did the December 30, 1974 hearing satisfy the requirements of section 41?” Id. As is the case herein, the opposing side in Save the Bay argued a second hearing on the discharge permit was specifically barred by the language in Section 49-17-41 providing that “no hearing on the same subject matter shall have been previously held.” In reversing and remanding to the Commission for the requested hearing, this Court stated:
We are not persuaded by this argument because the 1974 hearing was solely for the purpose of permitting interested parties to express their views and was not a hearing as contemplated by section 41. An information hearing such as the December, 197h, hearing is discretionary with the Commission. This kind of hearing might be useful on the question of issuing a permit because the attention of the Commission might be directed to possible effects of air emissions or waste water discharges not previously considered by the Commission, but a hearing of this kind does not satisfy the requirements of section 41. The only hearing accorded persons who are not permit applicants or holders, but who may be affected by permits issued, is contained in section hi. The requirement of due process is only satisfied by a hearing held as prescribed in section 41.
Id. at 99-100. (emphasis added).
The Commission argues that Save the Bay is based on a twenty year old statutory framework entirely different from the one applicable to this case. (See 1973 Miss.Laws, Chapter 373, § 1). The Commission also claims that as a case involving the issuance of a waste water discharge permit to a single private company, Save the Bay is not even factually comparable to this case concerning the adoption of a water quality standard applicable to the entire state of Mississippi. As it read at the time of Save the Bay, § 49-17-29, the section applicable to waste water permits, is different from § 49-17-19(b) applicable in the case at bar. Section 49-17-29 read, in relevant part:
Any person who is denied a permit by the commission or who has such permit revoked or modified shall be afforded an opportunity for a hearing in connection therewith upon written application made within thirty (30) days after service of notice of such denial, revocation or modification.
Clearly, the only persons entitled to notice and an opportunity to be heard in regard to applications for permits of waste water discharge permits were the applicants themselves and persons already holding permits. And although one public informational gathering hearing was held in Save the Bay, it was discretionary and merely provided that members of the general public could submit written comments to the Commission. Submission of evidence and oral testimony was prohibited.
The case currently before us, with reference to the setting of regulations for air and water quality standards as opposed to permit applications, is somewhat different, yet contains a major similarity to Save The Bay. As *929 noted above, § 49-17-19(b) mandates that public hearings shall he conducted prior to any action being taken on such regulation standards. While § 49 — 17—19(b) states only that notice of “public hearing” must be given, the Commission in this case provided the required notice and opportunity to be heard and held not one, but three public hearings, the attendance at which varied from 60 to 600 persons. In Save the Bay, this Court was obviously concerned with a system, which left interested persons other than applicants and persons already holding permits, who might also be affected by the grant or denial of a permit, "with no chance to be heard on the subject. The only chance to be heard by such affected persons was a hearing provided by § 49-17-41.
Once again, as in Save The Bay, the position of the Commission is that by conducting three public hearings on the supposed same subject matter, the requirements of § 49-17-41 has been satisfied. This argument was laid to rest by this Court in Save The Bay, which involved the precise same issue presented in the case sub judice.
We note that the language of § 49-17-41 remains to this day identical as when the Court decided Save The Bay. It should be clear that when the Commission issues an order, aggrieved citizens ought to and do have an absolute right to request a formal evidentiary hearing, challenging the decision of the Commission. This formal, full eviden-tiary hearing is not the same as informational gathering public hearings such as the three hearings conducted by the Commission in this case. Hearings conducted solely to allow interested or affected citizens to express their views are not the type of hearings contemplated by § 49-17-41. There is no real distinction between the public hearing held in Save The Bay and those hearings held in the case at bar, with the exception that the latter were mandatory. Neither is there significance with respect to whether they qualify as another “hearing on the same subject matter” as contemplated by § 49-17-41. The controlling factor is the type of hearing conducted. It is therefore obvious that § 49-17-41 is the statutory mechanism which places an affected or interested party’s specific grievance or issue into the judicial arena. This type of hearing as contemplated under § 49-17-41 is a full blown evidentiary hearing where interested or aggrieved parties may offer evidence in support of their position by use of documentation and witnesses, both lay and expert. The right of adversarial type proceedings and cross-examination of these witnesses is also contemplated under this type of hearing.
It is also noteworthy to this Court that after this Court’s decision in Save The Bay, the legislature changed the statutory scheme regarding permit hearings to provide inter alia for a discretionary public hearing or meeting “to obtain comments from the public on its proposed action....,” as well as a formal hearing providing that “any interested party aggrieved by such action may file a written request for a formal hearing before the permit board_” § 49-17-29(4)(a)(b) Miss.Code Ann. (Supp.1993). As previously noted, the legislature did not change the language of § 49-17-41, however. § ⅛9-17-hl still applies to all activities described in the chapter other than the permit process.
Due process concerns were clearly important in Save The Bay, yet what the Court did then in fact was interpret the statute. That statutory interpretation stands regardless of due process concerns. It thus remains clear that the only vehicle provided for an aggrieved party desirous of initiating judicial review of an administrative decision made in this area is to appeal under § 49-17-41. Therefore, the opinion of the Save The Bay Court was correct and we continue to adhere to it. There is no merit to this issue.
II.
The Commission cites the additional issue for this Court to consider that the lower court lacked venue of this matter. The remaining appellant/companies do not cite or address this issue of venue.
Miss.Code Ann. § 49-17-41 (Supp.1990) provides, in relevant part:
[T]he final order of determination of the commission upon such matters shall be conclusive, unless the petitioner, ... shall ... appeal to the chancery court of the *930 county where the hearing was held, or of the situs in whole or in part of the subject matter of the hearing_
The Commission argues the subject matter of the hearings in the present case was “the promulgation of the water quality standard for dioxin.” Since the promulgation of that regulation took place at the Commission’s offices in Jackson, the Commission concludes Hinds County is the only proper situs for venue purposes. In support, the Commission offers two Alabama cases and concludes that the “conservative venue policy” of this state mandates a reversal of this case based on the lower court’s erroneous decision finding venue to be proper in Jackson County, Mississippi.
The chancellor in denying the Commission’s motion to dismiss the appeal based on improper venue, stated:
§ ¿9-17-¿l as amended Mississippi Code 1972 provides that a petitioner may appeal from COMMISSION’S final order to the chancery court of the county where: (A) The hearing was held or (B) the chancery court of the county of the “situs in whole or in part of the subject matter of the hearing.”
First, the subject of the “ambient water quality standard”, § ¿9-17-17 Mississippi Code 1972, was dioxin in “waters of the state”, defined in § ¿9-17-5 as amended Mississippi Code 1972. The mere situs of the document fixing or memorializing the “ambient water quality standard” is irrelevant. Had the Legislature of the State of Mississippi intended that venue of all appeals from COMMISSION’S decisions be laid exclusively in the Chancery Court of Hinds County, Mississippi, then the Legislature could easily have so provided. The situs of the matter is the affected “waters of the state” which unquestionably lie “in whole or in part” within Jackson County, Mississippi.
The appellants, Parker et. al., respond that the lower court’s decision was both correct and most logical.
There are only two cases in which § 49-17-41 has been interpreted, and neither in regards to a venue issue.
First, it seems clear that the “subject matter of the hearing(s)” in this action was the setting of a water quality standard for dioxin in the waters of this state. At each of the three public hearings under consideration, opening remarks to that effect were made by the chairman: “The purpose of the hearing, as I think most of you know, is to receive your comments on changes to the state water quality standards. One obviously is to adopt a dioxin criteria for state waters and the proposed criteria is .1 PPQ.” “Our purpose for being here tonight is to listen, gather information, assimilate this information and use it in our process of decision making, as to what our dioxin levels, for the State of Mississippi waters will be.”
The Commission contends it is not arguing the actual document setting forth the water quality standard, but the ACT of adopting that standard is the subject matter to be considered. This argument focuses on a distinction which is not very meaningful since it would seem that nearly every decision of the Commission takes place following a vote at the Commission’s offices in Hinds County followed by an order to that effect. Such an interpretation would appear to render meaningless the provision alternatively providing for proper venue in the county of “the situs ... of the subject matter of the hearing, OR in the county where the hearing was held.”
The next question for the Court is what is “the situs in whole or in part” of the subject matter of the hearing(s)? The Commission argues that since the promulgation of the water quality standard is the proper subject matter, “the situs — its location — was not the “waters of the state,” but the City of Jackson.” However, as the Commission also points out, situs has been defined as a “site, situation, location, a place where a thing is.” Greene County v. Wright, 126 Ga. 504, 510, 54 S.E. 951, 953 (1906). It cannot be said the chancellor was in error in finding that the situs in this case was the waters of the state. For that reason, the proper situs would appear to include the counties in which the waters of the state are located. In support of this conclusion, the Court looks to § 49-17-19 which provides, in relevant part:
*931 § 49-17-19 Standards of air and water quality.
“(b) Prior to establishing, amending or repealing standards of air and water quality, the commission shall, after due notice, conduct public hearings thereon. Notice of public hearing shall specify the areas or waters for which standards are sought to be adopted, amended or repealed and the time, date and place of such hearing. Such notice shall be given by publication once a week for three successive weeks in a newspaper published in Hinds County and in a newspaper published or having a general circulation in each county in the area affected or in which the waters to be affected may be situated_”
It is clear from a review of § 49-17-19 that where the Legislature intended an act to take place in Hinds County, that a provision to that effect was specifically set forth. It can also be seen that it was contemplated that certain acts of the Commission regarding air and water quality would affect only certain parts of the state and thus notice of hearings was to be provided to those counties whose air or waters were affected. It happens in this case that all waters of the state were affected by the adoption of a state-wide water quality standard for dioxin, thus making it necessary to give notice to many counties. Analogizing the notice provisions of § 49-17 — 41 to the venue provisions of § 49-17-19, it would seem to be a most logical interpretation that venue is also proper in the counties in which the waters of the state are located, which are thereby affected by the promulgation of a state-wide water quality standard. As a coastal county, Jackson County therefore properly had venue of this action. The decision of the chancellor is not erroneous. This issue is without merit.
CONCLUSION
As in Save The Bay, we are once again holding that public informational gathering hearings are not a substitute for aggrieved parties requesting a full and complete evi-dentiary hearing as contemplated by § 49-17-41. Due process is only satisfied when requested by aggrieved parties, by the Commission conducting a formal hearing as prescribed by § 49-17-41. Due process was important in Save The Bay and remains so in the ease at bar. Yet, as in Save The Bay, we again must simply interpret the statutory scheme. § 49-17-41 is the only means for an aggrieved party wanting to commence judicial review of this "administrative agency’s decision.
The chancellor was clearly correct in his determination that the situs of this case was the “waters of the state”, thus the venue was proper in Jackson County.
The decision of the chancellor is affirmed.
AFFIRMED
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.