# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CC-00857-SCT

*GOLDEN TRIANGLE REGIONAL SOLID WASTE*
*MANAGEMENT AUTHORITY AND MISSISSIPPI*
*ENVIRONMENTAL QUALITY PERMIT BOARD*

*v.*

*CONCERNED CITIZENS AGAINST THE LOCATION*
*OF THE LANDFILL*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/28/97 |
| TRIAL JUDGE: | HON. WOODROW WILSON BRAND, JR. |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | TOMMIE S. CARDIN |
| | CHUCK D. BARLOW |
| ATTORNEY FOR APPELLEES: | JAY T. KEEHLEY |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED - 10/29/1998 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/19/98 |

**BEFORE PITTMAN, P.J., ROBERTS AND SMITH, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. On or about March 31, 1995, the Appellees, the Concerned Citizens Against the Location of the Landfill ("CCALL"), filed a Notice of Appeal challenging the final decision of Co-Appellant, Mississippi Department of Environmental Quality Permit Board ("Permit Board") to allow the placement of a solid waste landfill at a site in Clay and Oktibbeha counties. Also known as the Tibbee site, the location was proposed by Co-Appellant, Golden Triangle Solid Waste Management Authority ("Authority").

¶2. Briefs were filed by both parties, and an initial hearing was conducted by Chancellor Woodrow Wilson Brand, Jr., of the Oktibbeha County Chancery Court on September 4, 1996. After the initial hearing, the court requested the filing of additional briefs by both parties to address questions posed by the court at the September 4 hearing. The parties completed the filing of their supplemental briefs in late February, 1997.

¶3. On April 10, 1997, the court held that CCALL had been denied due process during the planning process and that CCALL was entitled to a site selection hearing. The court reversed the Permit Board's decision granting the permits, and directed the Authority to hold a due process site hearing. On May 28, 1997, the court entered a judgment encompassing its opinion of April 10, 1997. On June 23, 1997, and June 25, 1997, the Authority and Permit Board filed their notices of appeal from the judgment of the Chancery Court. On appeal, the Appellants raise the following issues:

**I. THE CHANCERY COURT ERRED IN REVIEWING THE PLANNING PROCESS, WHICH WAS OUTSIDE OF THE RECORD, IN MAKING ITS DECISION.**

**II. CCALL HAD NO DUE PROCESS RIGHT TO AN EVIDENTIARY HEARING DURING THE SITE SELECTION PROCESS AT THE AUTHORITY LEVEL.**

**III. CCALL HAD AN AMPLE OPPORTUNITY FOR INPUT BASED ON THE EXISTING STATUTORY FRAMEWORK.**

¶4. This Court finds that the chancery court exceeded the applicable scope of appellate review and as such committed reversible error in reversing the Permit Board's decision to grant the Authority's permit to operate the landfill. Also, CCALL had no due process right to an evidentiary hearing in the site selection process of the Authority. Even so, the applicable statutory framework provided CCALL with numerous opportunities for input and to challenge the proposed site.

¶5. Accordingly, the decision of the Chancery Court is reversed and the Permit Board's previous issuance of the permits to construct and operate the landfill is affirmed.

## STATEMENT OF FACTS

**Introduction**

¶6. In 1988, the Environmental Protection Agency ("EPA") proposed regulatory criteria requiring municipalities to develop regional landfills. These criteria, which eventually went into effect in 1993, necessitated the closure of over one hundred (100) landfills in Mississippi.

**The Authority**

¶7. In 1990, the Boards of Supervisors and city officials from the Golden Triangle area began to assess the impact of this federal mandate on the area and determine the steps to be taken to fulfill its requirements. The Golden Triangle area officials agreed that a regional landfill would best suit the waste disposal needs of its citizens while meeting the new requirements.

¶8. The Golden Triangle officials drafted the Mississippi Regional Solid Waste Management Authority Act, Miss. Code Ann. § 17-17-301 *et seq.*, and the Nonhazardous Solid Waste Planning Act, Miss. Code Ann. § 17-17-201 *et seq.*, which were subsequently enacted by the Legislature.

¶9. On June 11, 1991, the Golden Triangle Solid Waste Management Authority came into existence, pursuant to Section 17-17-301 *et seq.* The Authority was organized as a "public body corporate and politic constituting a political subdivision of the state." Miss. Code Ann. § 17-17-307 (1995). The Authority consists of Choctaw, Clay, Lowndes, Oktibbeha, Noxubee, and Webster counties, and the cities of

Ackerman, Columbus, Eupora, Macon, Starkville, and West Point. The Authority is responsible for the nonhazardous solid waste of approximately 175,000 people.

**State Agencies**

¶10. The Mississippi Department of Environmental Quality ("MDEQ") serves as the staff for both the Commission on Environmental Quality ("Commission") and the Permit Board, providing technical, legal and administrative support.

¶11. The Commission is a seven-member body appointed by the Governor to develop, implement and enforce environmental policy in Mississippi. The Commission promulgates environmental regulations that set the requirements to be met by applicants in order to obtain a permit from the Permit Board.

¶12. The Permit Board has more limited and specific authority than the Commission. The Permit Board is the exclusive administrative body which issues or denies permits affecting air pollution and water pollution control under the State's solid waste disposal laws. Generally, the Permit Board cannot institute permit conditions apart from those based on a regulation adopted by the Commission.

**The Landfill Creation Process**

¶13. The process of developing, constructing, and operating a regional solid waste landfill begins on the local level. Plan approval requires the adoption of the plan by resolution of the Board of Supervisors of each county comprising the regional authority. The Board's action on the plan must be conducted in an open meeting, but does not require public notice or either an informal or formal hearing. Each county's adoption of the plan is appealable to its respective chancery court on a bill of exceptions.

¶14. After the plan is approved by the individual counties, the Regional Authority adopts the plan. An informal hearing is required along with notice by publication. There is no right to appeal the Authority's adoption of the plan until it is approved by the Commission.

¶15. Next, the plan must be approved by the Commission. An interested party may request a formal evidentiary hearing before the Commission concerning the local plan where that party may offer testimony, present witnesses and submit evidence. If the plan is not approved, the Authority must submit a revised plan that remedies any deficiencies within 120 days. The final decision of the Commission is appealable to chancery court.

¶16. Once the local plan is approved by the Commission, the landfill permit applicant files an application for processing with the MDEQ. The processing stage includes a public comment period and a mandatory public hearing. At the conclusion of the processing stage, the Permit Board may either accept or deny the application for a permit to operate the landfill.

**Present Case**

¶17. In the present case, after the Authority submitted the Plan to the Commission, the Commission directed the Authority to revise its Plan to include a specific proposed site for its landfill. Although the Authority had originally planned to consider several alternative sites for this landfill, at the direction of the Commission, the Authority began to focus on a single site. The Authority created a site selection committee to review the potential sites in order to make a recommendation to the Authority. Upon the

recommendation of the siting committee, the Authority chose a site situated in Clay and Oktibbeha counties, the Tibbee site, as the preferred site. The Authority thereafter included the proposed site in the Revised Plan, as requested by the Commission.

¶18. On December 9, 1993, the Commission approved the Authority's revised plan by a unanimous decision. Neither CCALL nor any other party appealed the Commission's decision. The next step was the permitting process.

**The Permitting Process**

¶19. Following the planning process, the Authority prepared and submitted its permit application, to construct and operate the landfill, to the Permit Board for approval. The Permit Board's staff reviewed the applications and prepared three draft permits for the landfill. The Permit Board issued a public notice of the Authority's applications and requested that the public submit written comments concerning the issuance of the permits. Subsequently, the Permit Board issued a second public notice inviting the public to attend a public hearing concerning the Authority's permits.

¶20. On October 27, 1994, the Permit Board conducted the public hearing at the Golden Triangle Vo-Tech School in Mayhew, Mississippi. The Permit Board gave every person at the hearing the opportunity to comment on the landfill. Comments were made by area residents, businesses, public officials and many others including those from CCALL objecting to the landfill.

¶21. After the close of the comment period, the Permit Board staff prepared the official record. The Permit Board reviewed the record and on November 22, 1994, approved the Authority's permit applications. Shortly thereafter, on December 19, 1994, CCALL requested a full formal administrative hearing before the Permit Board.

¶22. On March 14, 1995, the Permit Board conducted the formal hearing. During the formal hearing, MDEQ and the Authority offered site data, exhibits and expert testimony in support of the Authority's request for the permits. At the conclusion of the hearing, the Permit Board voted unanimously to affirm its previous decision issuing the three permits to the Authority.

¶23. CCALL appealed the Permit Board's final decision affirming the issuance of the permits, to the Chancery Court of Oktibbeha County. By a judgment dated May 28, 1997, the Chancery Court found that the December 21, 1992, public hearings held in Clay and Oktibbeha counties did not comply with the Authority's duty to provide due process hearings. The Chancery Court directed the Authority to hold another public hearing to discuss siting criteria as applied to the selected site.

¶24. Also, the Court ordered the Authority "to encourage and entertain discussion of the applicability of the siting criteria to" other sites. Further, the Court held that the hearing should "allow for the introduction of testimony by the public, and cross examination of all members of the siting committee and its experts." The judgment also required all past and present members of the site selection subcommittee to be in attendance and prepared to respond to public inquiry. It is from this chancery court judgment that this appeal now arises.

## DISCUSSION OF THE ISSUES

## I. THE CHANCERY COURT ERRED IN REVIEWING THE PLANNING PROCESS, WHICH WAS OUTSIDE OF THE RECORD, IN MAKING ITS DECISION.

¶25. The Appellants' first argument alleges that the Chancery Court impermissibly reviewed the actions of the Commission during the planning process which occurred before the permit application was made. The Appellants complain that the court below focused solely on the planning process and chose to ignore the entire administrative record on the permits, which were at issue on the appeal.

### Permitting Process

¶26. When deciding whether permits will be issued for the operation of a landfill, the Permit Board is to consider twenty-three (23) siting criteria, which have been duly promulgated for this purpose. These criteria are contained in the Miss. Nonhazardous Waste Management Regulations § III. This was the inquiry before the Permit Board, and it made its decision based on the siting criteria. The Authority was required by the Commission to designate a single site in its Revised Plan prior to submitting its application for a permit for that site.

¶27. Once an application is submitted, that site is then evaluated by the Permit Board. If the site submitted by the Authority does not meet the siting criteria, then the Permit Board rejects it and the Authority is required to select another site. On November 22, 1994, the Permit Board held that the site proposed by the Authority met all of the applicable siting criteria, and therefore, the necessary permits should be issued for its operation.

### The Standard of Review

¶28. The appeal before the chancery court below was an appeal from the final decision of the Permit Board issuing the requisite permits to the Authority for operation of its landfill. *See* Miss. Code Ann. § 49-17-29(5)(b) (Supp. 1998).

¶29. The trial court's scope of review is prescribed by statute which mandates that "[a]ppeals shall be considered only upon the record as made before the Permit Board." Miss. Code Ann. § 49-17-29(5)(b) (Supp. 1998). In reviewing the decisions of administrative agencies, the lower court must uphold the agency's decision unless it finds as follows:

> The reviewing court will entertain the appeal to determine whether or not the order of the administrative agency (1) was unsupported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party.

***Mississippi Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors***, 621 So. 2d 1211, 1215 (Miss. 1993).

¶30. In ***Chickasaw County***, we found that a rebuttable presumption exists in favor of agency decisions, and an appellate court may not substitute its judgment for that of an agency. ***Chickasaw County***, 621 So. 2d at 1216. That case involved an appeal from the Commission before the same chancellor as in the case *sub judice*. This Court held that the chancellor failed to apply the appropriate standard of review and substituted his own judgment for that of the agency, an action which we have expressly proscribed. ***Id***. at 1217.

¶31. This Court continues to follow the rule that the scope of appellate review is limited to the administrative record and the findings of the agency. ***Board of Law Enforcement Officers Standards & Training v. Butler***, 672 So. 2d 1196, 1199 (Miss. 1996).

¶32. In ***Butler***, the Board of Law Enforcement Officers Standards and Training ("Board") denied a police officer's request for certification because he was convicted of a misdemeanor involving moral turpitude. ***Butler***, 672 So. 2d at 1198. The police officer appealed the Board's decision to the Chancery Court. *Id*. The Chancery Court held a bench trial *de novo*and allowed testimony of the officer and another witness, which was not considered by the Board when it made its decision. *Id*.

¶33. The chancellor held that the Chancery Court "has the power . . . to review the record from the administrative agency, and to add to it such other testimony and proof that could have been available, but was not used for whatever the reason may be." ***Id***. The Board appealed to this Court. We restated our rule that "[a]ppellate review of an agency decision is limited to the record and the agency's findings." ***Id***. at 1199. We held that the chancellor committed reversible error in going beyond the administrative record to hear testimony in his review of the Board's decision. ***Id***.

¶34. The Appellee complains that the lower court erred when it reviewed the findings of the Commission approving the Plan instead of focusing only on the actions of the Permit Board which were at issue in the appeal to the Chancery Court.

### Lower court's review

¶35. The lower court erred when it expanded its scope of review to include issues concerning the planning stage instead of focusing only on the permitting process from which the appeal had been brought.

¶36. The matter before the lower court arose out of the CCALL's appeal of the Permit Board's decision. The site the Permit Board was considering had long since been determined by the Commission. The Permit Board's function was to determine if that one site was suitable according to the criteria contained in the regulations. The Permit found the site submitted by the Authority to be suitable for a solid waste landfill.

¶37. On appeal, the chancellor should have only considered whether the Permit Board abused its discretion in issuing a permit to operate the Tibbee site. Instead, the court's focus was on whether the December 21, 1992 hearing, which occurred during the planning process, violated CCALL's "due process rights." Indeed, the opening paragraph of the Final Judgment provides that:

> this cause is before the Court on appeal of Appellant's claim of denial of due process by the Golden Triangle Solid Waste Management Authority during the public hearings held before the Authority on December 21, 1992, which pertained to the site selected for the Golden Triangle Regional Landfill.

This statement by the chancellor below indicates that his focus was outside the bounds of the Permit Board's decision. This was supposed to be an appeal of the decision of the Permit Board to issue permits to the Authority to operate the landfill.

¶38. In its decision to overturn the Permit Board's decision, the lower court relied on ***Mississippi Commission on Environmental Quality v. Parker***, 643 So. 2d 923 (Miss. 1994), in support of the holding that an evidentiary hearing was required before the Authority during the planning process. In that

case, this Court stated that the nature of the hearing requested by an objecting party under § 49-17-41 should be that of a full and complete evidentiary hearing. *Parker*, 643 So. 2d at 929. However, *Parker* is distinguishable from the case *sub judice*. The statute discussed in *Parker* is for appeals from decisions of the Commission, whereas the present case involved a decision by the Permit Board. *Id.*

¶39. The Chancery Court below was bound by the administrative record for its review of the Permit Board's final decision, but it erroneously considered evidence outside of the record, alleged by CCALL, which concerned the course of events which took place during the planning process at the Authority and Commission levels. Those events were not before the Permit Board when it made its final decision, from which the appeal to the lower court was derived.

¶40. The precedent previously set by this Court mandates that the appellate court may not go beyond the administrative record when reviewing agency decisions. As a result, the chancellor erred when he expanded his scope of review to consider actions taken during the planning process.

## II. CCALL HAD NO DUE PROCESS RIGHT TO AN EVIDENTIARY HEARING DURING THE SITE SELECTION PROCESS AT THE AUTHORITY LEVEL.

¶41. The Appellants next argue that the Authority never violated any due process right(s) of CCALL in either the planning or permitting process. CCALL claims that its due process rights were violated because it was not allowed to participate in the Authority's decision as to the location of the landfill site.

¶42. The Fourteenth Amendment to the United States Constitution guarantees that the government will not take life, liberty or property without due process of law. U.S. Const. amend. XIV, § 1.

¶43. However, this Court has held that due process does not guarantee "citizen[s] the right to reasonable advance notice and the opportunity to be heard" before legislative decisions to undertake public improvements are made. *In re Validation of $7,800,000 Combined Utility Sys. Revenue Bond, Gautier Utility Dist.*, 465 So. 2d 1003, 1008 (Miss. 1985) (hereinafter "*Gautier*").

¶44. In *Gautier*, the utility district, a separate political subdivision, decided that it was "necessary and in the best interest of the District" to construct and operate a combined utility system. *Gautier*, 465 So. 2d at 1009. It was not until the bond validation proceeding that the objectors argued that they had a right to be heard on the question of whether the district needed the utility system. *Id.* at 1018. However, we held that the decision to issue bonds to finance, construct and operate the utility system was a legislative function of the district, specifically stating that:

> Where the improvements to be constructed and maintained and the method of financing same are enacted by a political subdivision of the state which has been granted full legislative powers in the premises, the owners of property in that political subdivision have no due process right to be heard on the question of the desirability or feasibility of the project or the terms and provisions for its financing, unless, of course, the political subdivision at issue acts ultra vires.

*Gautier*, 465 So. 2d at 1020.

¶45. This Court explained that the objectors' only course of redress was through the political process and not through the judicial process. *Id.* at 1019 (citing *In re Savannah Special Consol. Sch. Dist*, 208 Miss. 460, 471-72, 44 So. 2d 545, 548 (1950)).

¶46. To give the public a constitutional right to be heard on every policy decision of the Authority would prevent the Authority from performing the function for which it was created. Indeed, in ***Minnesota State Board For Community Colleges v. Knight***, 465 U.S. 271, 285 (1984), the U.S. Supreme Court found that:

> Government makes so many policy decisions affecting so many people that it would likely grind to a halt were policymaking constrained by constitutional requirements on whose voices must be heard.

***Knight***, 465 U.S. at 285.

¶47. Applying these principles to the case at hand, we hold that CCALL had no due process right to be involved in the policy decision made by the Authority on the location of the landfill. Like the utility district in ***Gautier***, the Authority was created as a public body corporate and politic constituting a political subdivision of the state. Miss. Code Ann. §17-17-307 (1995).

¶48. The Authority has the express power to construct and operate a landfill facility anywhere within its boundaries. Miss. Code Ann. §17-17-317(d) (1995). Likewise, the Authority's choice of locations for its landfill was an exclusive legislative function of the Authority. Therefore, just as the objectors in ***Gautier*** had no due process right to be heard on the policy decision of the district to construct its utility system, neither did CCALL have any due process right to be heard on the decision of the Authority to locate its landfill facility. CCALL was afforded an opportunity to challenge the location of the landfill during the planning process, but it chose to waive that opportunity through its inaction. *See* Miss. Code Ann. 49-17-29(4) (1990). The record reflects that at all stages in the planning process, the Authority made a sincere effort to listen to CCALL's objections.

¶49. However, the Authority manages the solid waste for approximately 175,000 people. To give each one of these 175,000 people a direct voice in the location of a regional landfill would greatly hinder the Authority from managing the solid waste of the region. That is why the Authority is established as a separate political subdivision with its own governing board, with the power to locate its landfill anywhere within its boundaries. Miss. Code Ann. §§ 17-17-307, 17-17-309, 17-17-313, 17-17-317 (1995). The location of the landfill was clearly a policy decision of the Authority for which CCALL had no due process right to question at the time the decision was made by the Authority. Therefore, CCALL's due process rights were not violated and the lower court was in error when it found otherwise.

### III. CCALL HAD AMPLE OPPORTUNITY FOR INPUT BASED ON THE EXISTING STATUTORY FRAMEWORK.

¶50. In its final point of error, the Appellees assert that all of CCALL's due process rights to object to the location of the landfill in this regard were met or exceeded, and thus CCALL has no claim of a denial of any due process rights.

¶51. The permitting process began after the Commission approved the Plan. Before the Authority could build or operate on the chosen site, there had to be a permit issued by the State of Mississippi *via* the Permit Board. Miss. Code Ann. § 49-17-29(3)(c) (Supp. 1998). The Permit Board is the "exclusive administrative body to make decisions" about the issuance of a permit to construct and operate a non-hazardous solid waste facility. Miss. Code Ann. § 49-17-29(3)(a) (Supp. 1998).

¶52. However, the permitting process does not require the submission of several sites, from which the Permit Board may choose the "best" site for the landfill. Rather, the applicant submits one site to the Permit Board. The Permit Board must either approve or disapprove the Authority's site. The Permit Board may not choose another site for the Authority. If the Permit Board rejects the Authority's proposed site, then the Authority must select another site, not the Permit Board. The Permit Board only has jurisdiction to consider the single site submitted in the Authority's permit application, and not numerous sites which might have been available to the Authority. *See State Oil & Gas Bd. v. Crane*, 271 So. 2d 84, 86-87 (Miss. 1972) (holding it is not necessary to show proposed location preferable to other locations).

¶53. Upon approval of the Plan by the Commission, the Authority shall make application to the Permit Board to approve and issue a permit. Miss. Code Ann. § 49-17-29(3)(c) (Supp. 1998).

¶54. On January 28, 1994, the Authority filed its applications for permits with the Permit Board. Next, the Permit Board was to hold a public hearing to obtain public comment on the proposed landfill. Miss. Code Ann. § 49-17-29(4)(a) (Supp. 1998). The Permit Board did, in fact, hold such a public hearing in the instant case on October 27, 1994. At this public hearing, CCALL members attended and made extensive comments in objection to the landfill. *Id*. Also, many citizens, businesses, industrial groups, Chambers of Commerce and public officials participated in this hearing. *Id*. Following the public hearing, the Permit Board approved the permits for the operation of the landfill on November 22, 1994.

¶55. Following such a ruling, pursuant to statute, "any interested party aggrieved" by the action of the Permit Board could request a formal hearing within thirty (30) days of the Permit Board's action. Miss. Code Ann. § 49-17-29(4)(b) (Supp. 1998). In December of 1994, CCALL requested a full formal hearing pursuant to this statute. On March 14, 1995, the Permit Board conducted a full evidentiary hearing in compliance with the statutory guidelines. Following the hearing, the Permit Board is to enter in its minutes a final decision regarding the permit. Miss. Code Ann. § 49-17-29(4)(b) (Supp. 1998). The Permit Board, in the instant case, affirmed its prior decision to issue the permits. Finally, any person aggrieved by the action of the Permit Board may appeal such decision to the chancery court. Miss. Code Ann. § 49-17-29(5)(b) (Supp. 1998).

¶56. CCALL chose to appeal the decision of the Permit Board to the Chancery Court of Oktibbeha County pursuant to that statute. Therefore, CCALL's appeal to the Chancery Court below was an appeal of the Permit Board's decision to affirm the granting of the permits.

¶57. In the instant case, CCALL never established that it suffered any injury or compensable damage. CCALL simply does not like the location of the landfill, but it cannot point to any evidence establishing that the landfill site failed to meet any one of the twenty-three (23) siting criteria that must be met before a permit can be issued. Moreover, CCALL was afforded a full evidentiary hearing before the Permit Board to challenge the chosen landfill site, and it failed to meet the challenge.

¶58. CCALL had an opportunity to be heard concerning the location and creation of this landfill. Thus, the chancellor below erred in his finding that CCALL was not allowed adequate input in the location and creation of this landfill.

## **CONCLUSION**

¶59. The chancery court exceeded the applicable scope of appellate review and thus was manifestly in

error in reaching its decision in this appeal. CCALL had no due process right to an evidentiary hearing in the site selection process of the Authority. Even so, CCALL had numerous opportunities for input and to challenge the proposed site. While the location of the landfill is unpopular and may be objectionable, it is a necessity, and under state law, a permitted activity. As a result, this Court reverses the decision of the chancellor below and reinstates the action of the Permit Board to issue the Authority three permits to construct and operate the landfill at the Tibbee site in Oktibbeha and Clay counties.

¶60. **REVERSED AND RENDERED.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS, SMITH AND WALLER, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY. PRATHER, C.J., AND MILLS, J., NOT PARTICIPATING.**