# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-CC-00486-SCT

*HINDS COUNTY*

*v.*

*MISSISSIPPI COMMISSION ON ENVIRONMENTAL QUALITY, MADISON COUNTY AND BILBERRY FAMILY LIMITED PARTNERSHIP AND MADISON COUNTY BOARD OF SUPERVISORS*


| | |
|---|---|
| DATE OF JUDGMENT: | 02/25/2010 |
| TRIAL JUDGE: | HON. WILLIAM JOSEPH LUTZ |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | BARRY H. POWELL |
| | BOBBY OWENS |
| | RAJITA IYER MOSS |
| ATTORNEYS FOR APPELLEES: | ROY FURRH |
| | AUBREY BRYAN SMITH, III |
| | ERIC T. HAMER |
| | FRED L. BANKS, JR. |
| | LUTHER T. MUNFORD |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED AND REMANDED - 04/14/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE CARLSON, P.J.,  PIERCE AND KING, JJ.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    In 2003, the Madison County Board of Supervisors amended Madison County's waste-management plan to add a third municipal solid waste landfill to the county's plan. The plan was then submitted to the Mississippi Commission on Environmental Quality

(Commission)[1] and, after an evidentiary hearing, was approved. Hinds County appealed the Commission's approval to the Chancery Court of the First Judicial District of Hinds County. The four sitting chancellors of the Fifth Chancery Court District recused themselves, and in due course, the Chief Justice of this Court entered an order appointing Senior Status Judge William J. Lutz as a special judge to preside over all proceedings in this case. After hearing oral arguments by counsel for the parties, Judge Lutz entered an order affirming the Commission's approval of the amended plan. Hinds County has now appealed to this Court. We affirm the special judge's order.

**FACTS AND PROCEEDINGS BEFORE THE BOARD OF SUPERVISORS, THE COMMISSION, AND THE CHANCERY COURT**

¶2.    The Bilberry Family Limited Partnership (Bilberry) owns a 169-acre parcel of land in Madison County just east of North County Line Road. North County Line Road and the area to its west are in Hinds County. Bilberry seeks to develop 100 acres of the parcel into

---

[1] The Mississippi Commission on Environmental Quality governs the Mississippi Department of Environmental Quality (MDEQ), and the Commission "is empowered to formulate [MDEQ] policy, enforce rules and regulations, receive funding, conduct studies for using the State's resources, and discharge duties, responsibilities and powers as necessary." Commission on Environmental Quality, http://www.deq.state.ms.us/MDEQ.nsf/pageAbout_Commission? (last visited Mar. 18, 2011). The MDEQ "is responsible for protecting the state's air, land, and water" and the MDEQ's "mission is to safeguard the health, safety, and welfare of present and future generations of Mississippians by conserving and improving our environment and fostering wise economic growth through focused research and responsible regulation." Mississippi Department of Environmental Quality, http://www.deq.state.ms.us (last visited Mar. 18, 2011). *See also **Golden Triangle Reg'l Solid Waste Mgmt. Auth. v. Concerned Citizens Against the Location of the Landfill***, 722 So. 2d 648, 650 (Miss. 1998) (discussing authority of the MDEQ, Commission, and Permit Board).

a municipal solid waste landfill. The property is adjacent to an existing Madison County landfill.

¶3.    Bilberry must obtain a permit from the Mississippi Department of Environmental Quality (MDEQ) in order to construct the landfill. *See* Miss. Code Ann. § 17-17-229 (Rev. 2003).[2] The process of obtaining a permit involves several governmental reviews. Each level of review, as well as the facts pertaining to that review, is discussed below.

**1. Zoning**

¶4.    First, the landowner  must have the property re-zoned as industrial property. *See* Miss. Code Ann. § 17-17-229(1)(b) (Rev. 2003). Bilberry applied for re-zoning in 1998 and, after a public hearing, the Madison County Board of Supervisors re-zoned the property as industrial.

**2. Amendment to County's Waste-Management Plan**

¶5.    Next, the county must amend its waste-management plan to include the proposed landfill. Miss. Code Ann. § 17-17-227 (Rev. 2003). As part of the amendment process, the county must give public notice. *Id*. § 17-17-227(5)(a). Madison County gave public notice and held several public meetings and hearings from 1998 to 2002. In November 2002, Hinds County objected to the amendment. Hinds County claimed that the proposed landfill would increase road maintenance costs for North County Line Road, conflict with its comprehensive plan for low-density housing in the area, and affect the air space around

---

[2] Mississippi Code Sections 17-17-225, -227 and -229 apply to this case. Sections 17-17-227 and -229 were amended in 2006. The Commission approved Madison County's plan in 2005. The pre-amendment versions of the statutes apply in today's case. *See* ***Hudson v. Moon***, 732 So. 2d 927, 930-31 (Miss. 1999).

Hawkins Field, an airport located in Hinds County. In January 2003, the Madison County Board of Supervisors voted unanimously to amend its waste-management plan.

### 3. Review by the Mississippi Commission on Environmental Quality

¶6.     After a county's waste-management plan is amended, the new plan must be submitted to the Commission for review and approval. *Id.* § 17-17-225. When Madison County submitted its plan, the Commission had concerns about the public-comment procedures when the amendment was before the Madison County Board of Supervisors and requested that Madison County hold another public hearing. After a public hearing in November 2003, the Madison County Board of Supervisors again voted unanimously to amend the county's waste-management plan, and the plan was resubmitted to the Commission. In January 2004, new members of the Madison County Board of Supervisors were elected, which prompted the Commission to request that the Board vote again. In April 2004, the amendment passed with a three-to-two vote.

¶7.     After the April 2004 vote, the amended plan was submitted to the Commission again. Commission staff reviewed and recommended the plan. In November 2004, the Commission held a hearing and approved the amended plan. After the Commission's approval, Hinds County intervened and requested a full evidentiary hearing. The hearing was held in June 2005. Eighteen witnesses testified at the hearing. The amended plan was approved by the Commission by an order entered on August 25, 2005.

### 4. Appeal to Chancery Court

¶8.     Hinds County appealed the Commission's order to the Chancery Court of the First Judicial District of Hinds County.[3]  Miss. Code Ann. § 17-17-45 (Rev. 2003).  Judge Lutz affirmed the Commission's order, finding that there was substantial evidence to support the Commission's approval of the amended plan.  Hinds County has now appealed to this Court.

**5.  Subsequent Governmental Review**

¶9.     Because this Court is affirming the Commission's approval of the plan, the amended plan must next be submitted for approval by the Permit Board of the Mississippi Department of Environmental Quality.  *Id.* § 17-17-229.  If the plan is approved by the Permit Board, Hinds County will have an opportunity to appeal the Permit Board's approval to chancery court and then to this Court.  *Id.* § 17-17-45.

**DISCUSSION**

¶10.    This Court may overturn an administrative agency's order only if the order: (1) was not supported by substantial evidence; (2) was arbitrary or capricious; (3) was beyond the power of the administrative agency to make; or (4) violated a statutory or constitutional right of the complaining party.  *P.E.R.S. v. Dishmon*, 17 So. 3d 87, 91 (Miss. 2009) (citing *P.E.R.S. v. Marquez*, 774 So. 2d 421, 425 (Miss. 2000)).  There is a rebuttable presumption in favor of the administrative agency's actions, and the challenging party has the burden of proof to rebut the presumption.  *Id.* at 91 (citing *Brinston v. P.E.R.S.*, 706 So. 2d 258, 260

---

[3] Typically, an aggrieved party must exhaust all available administrative remedies before seeking judicial review.  *P.E.R.S. v. Hawkins*, 781 So. 2d 899, 905 (Miss. 2001). But, Mississippi Code Section 17-17-45 (Rev. 2003) allows for a party aggrieved by an order of the Commission to appeal to chancery court.  *See generally Miss. Comm'n on Envtl. Quality v. Parker*, 643 So. 2d 923, 927 (Miss. 1994).

5

(Miss. Ct. App. 1998)).  This Court may not re-weigh the facts, nor may it substitute its judgment for that of the agency's *Id.* (citing *Marquez*, 774 So. 2d at 425).

¶11.    Hinds County has presented four issues for this Court's consideration: (1) whether the Commission had a statutory duty to determine Madison County's need for an additional landfill; and, if so, whether the Commission improperly delegated its duty to Madison County; (2) whether the Commission considered the hardship that the Bilberry landfill will cause Hinds County; (3) whether Madison County violated its statutory requirement for consideration of public comment; and (4) whether the landfill violates the concept of environmental justice.

## I.    WHETHER THE COMMISSION HAD A STATUTORY DUTY TO DETERMINE MADISON COUNTY'S NEED FOR AN ADDITIONAL LANDFILL; AND IF SO, WHETHER THE COMMISSION IMPROPERLY DELEGATED ITS DUTY TO MADISON COUNTY.

¶12.    The Commission's statutory responsibilities with regard to approving a county's waste-management plan are listed in Mississippi Code Sections 17-17-225 to 17-17-229 (Rev. 2003).  Section 17-17-225 lists criteria that the Commission must consider when evaluating a waste-management plan.  Miss. Code Ann. § 17-17-225 (Rev. 2003).  One of these criteria is "[t]he adequacy of plans and implementation schedules for providing *needed* nonhazardous solid waste management capacity for the twenty-year period."  *Id.* § 17-17-225(d) (emphasis added).

¶13.    Hinds County argues that, under Section 17-17-225(d), the Commission has a statutory duty to determine whether Madison County needed another landfill and that it

6

improperly delegated its duty to Madison County. To support its claim, Hinds County cites the following paragraph of the Commission's order:

> The Commission finds that historically it has left decisions on the need for a new landfill to the local government in planning matters and, consistent with its past decisions, now chooses to rely on Madison County in this matter. Additionally, the Commission finds that state law requires the permit applicant to provide a demonstration of need document as part of the permitting process before the Permit Board pursuant to Miss. Code Ann. § 17-17-229 (Rev. 2003). The Commission further finds that Madison County considered the need for the North County Line Landfill when it decided to approve the amendment to the Plan by the Board.

Hinds County also argues that evidence in the record demonstrates that Madison County does not need an additional landfill, including the facts that Madison County already has two existing landfills and that Madison County's finding of need was erroneously based on the conclusion that it needed competition among the landfills.

¶14.   Under the statutes governing the waste-management plan amendment process at the time that the Commission approved Madison County's plan, we find that Madison County and the Permit Board are to make determinations of need, not the Commission. While Section 17-17-225 mentions need, it simply requires the Commission to determine the "adequacy" of the plan in "providing needed nonhazardous solid waste management capacity for the twenty-year period." Miss. Code Ann. § 17-17-225(d) (Rev. 2003). The statute does not require an independent finding of need by the Commission, but rather requires the Commission to determine whether the proposed plan adequately meets the needs demonstrated by the county.

7

¶15. The code sections governing approval of an amended waste-management plan place the responsibility of demonstrating need in the hands of the county.[4] Id. § 17-17-229(1). Under Section 17-17-229(1), Madison County is required to demonstrate need for the proposed landfill to the MDEQ Permit Board.[5] This step in the approval process has not happened in today's case because Hinds County appealed the Commission's approval of

---

[4] *See generally **Thomas v. Bd. of Supervisors of Panola County**, 45 So. 3d 1173, 1181 (Miss. 2010) (Zoning *applicants* must demonstrate need in order to reclassify property.); **Haas Trucking, Inc. v. Hancock County Solid Waste Auth.**, 29 So. 3d 853, 854 (Miss. Ct. App. 2010) (*Applicants* to develop rubbish site required to demonstrate need in initial application to county solid waste authority.).

[5] Section 17-17-229 includes the following language which requires counties to demonstrate need to the Permit Board:

> Each permit application for a commercial nonhazardous solid waste management facility *shall contain a demonstration of need* which shall include the following:
>
> (a) Verification that the facility for which the permit is sought meets needs identified in the approved local nonhazardous solid waste management plan which shall take into account the quantities of municipal solid waste generated and the design capacities of existing facilities;
> (b) Certification that the facility for which the permit is sought complies with local land use and zoning requirements, if any;
> (c) Demonstration, to the extent possible, that the host jurisdiction and the jurisdiction generating the solid waste destined for the applicant's facility are actively involved in, and have a strategy for, meeting the statewide waste reduction goal;
> (d) Certification that the proposed service area of the facility is consistent with an approved local nonhazardous solid waste management plan; and
> (e) The extent to which the proposed facility is needed to replace other facilities.

Miss. Code Ann. § 17-17-229(1) (Rev. 2003) (emphasis added).

8

Madison County's amended waste-management plan, which is one step prior to the application to the Permit Board.

¶16.    The MDEQ's Evaluation Criteria for Local Solid Waste Management Plans mirror these statutory requirements.   The MDEQ's criteria require that an amended waste-management plan meet the twenty-year needs of the area and states: "*Each plan must demonstrate* that the projections of solid waste generated over the planning period are adequate to meet the needs of the area." (Emphasis added.)  The MDEQ's criteria, along with the statutes governing the amendment process, put the responsibility of demonstrating need in the hands of the county and simply require the Commission to determine whether the proposed plan will adequately meet the needs demonstrated by the county.

¶17.    This Court has held that when "an agency interprets a statute that it is responsible for administering, we must defer to the agency's interpretation so long as the interpretation is reasonable."  **Titan Tire of Natchez, Inc. v. Miss. Comm'n on Envtl. Quality**, 891 So. 2d 195, 200 (Miss. 2004) (citations omitted). This Court also "give[s] great deference to the administrative agency in interpreting its own regulations." **Id.** at 202 (citing **Miss. Dep't of Envtl. Quality v. Weems**, 653 So. 2d 266, 273 (Miss. 1995)); *see also* **Sierra Club v. Miss. Envtl. Quality Permit Bd.**, 943 So. 2d 673, 679-80 (Miss. 2006).  The Commission was essentially interpreting the governing statutes and its own regulations when stating that "it has left decisions on the need for a new landfill to the local government in planning matters and, consistent with its past decisions, now chooses to rely on Madison County in this matter."  Based on the language of Sections 17-17-225 and 17-17-229 and the MDEQ's criteria, we find that the Commission's interpretation was reasonable.

9

¶18.   Moreover, at the hearing before the Commission, Madison County provided ample evidence demonstrating its need for an additional landfill. This evidence included: (1) testimony that the existing landfills will not meet the twenty-year need for the area; (2) the fact that other landfills in the area had closed; (3) that the population in the area was growing at twenty percent more than earlier growth estimates; and (4) that competition among landfills was needed to ensure fair pricing. Based on this evidence, the Commission found that Madison County's "review of the proposed amendment was consistent with state law and the regulations of this Commission." Thus, we find that the Commission met its statutory duty under Section 17-17-225.

¶19.   The Commission does not have an independent statutory duty to determine need for an additional landfill, but instead, it must determine whether an amended plan adequately meets the waste-disposal needs demonstrated by the county. Because the Commission does not have a duty to determine need, it cannot improperly delegate the duty. Accordingly, this issue is without merit.

## II.   WHETHER THE COMMISSION CONSIDERED THE HARDSHIP THAT THE BILBERRY LANDFILL WILL CAUSE HINDS COUNTY.

¶20.   Hinds County argues that the Commission failed to consider the hardship that the proposed landfill will cause Hinds County. To support this contention, Hinds County argues the following: (1) that the landfill will increase maintenance costs for North County Line Road; (2) that the landfill conflicts with Hinds County's Comprehensive Plan, which calls for residential development in the area; and (3) that the landfill will cause danger and hardship to the health and well-being of Hinds County residents living near the site.

¶21. Hinds County asserts that the Commission has a duty to consider hardship on surrounding areas when approving an amended waste-management plan. In support of this contention, Hinds County argues that considering hardship is part of the Commission's "overall statewide responsibility in regulating solid waste landfills in Mississippi . . . ." Hinds County also argues that the notice provision in Mississippi Code Section 17-17-227(5)(a) (Rev. 2003), which requires a county seeking to amend its waste-management plan to notify adjacent counties, implies that hardship on the adjacent counties should be considered.

¶22. Mississippi Code Section 17-17-229 (Rev. 2003) lists criteria that must be considered by the Permit Board when determining the location and permitting of a landfill. These factors include:

> (a) Hydrological and geological factors, such as floodplains, depth to water table, soil composition, and permeability, cavernous bedrock, seismic activity, and slope;
> (b) Natural resources factors, such as wetlands, endangered species habitats, proximity to parks, forests, wilderness areas and historical sites, and air quality;
> (c) Land use factors, such as local land use, whether residential, industrial, commercial, recreational, agricultural, proximity to public water supplies, and proximity to incompatible structures such as schools, churches and airports;
> (d) Transportation factors, such as proximity to waste generators and to population, route safety and method of transportation; and
> (e) Aesthetic factors, such as the visibility, appearance and noise level of the facility.

Miss. Code Ann. § 17-17-229(2) (Rev. 2003).

¶23. These criteria encompass Hinds County's hardship concerns. Because Madison County's amended waste-management plan has not yet reached the Permit Board phase, many of these factors have not been considered in-depth. Although the Commission did

11

consider some of Hinds County's concerns, the Commission is not required by statute to consider these factors. *See id.* § 17-17-225. In fact, the Commission suggested to the Permit Board that Bilberry be required to clean litter off the adjacent road and that the landfill be set back from the road, evidencing that the Commission did consider possible hardship to Hinds County.

¶24. The MDEQ's own regulations mirror the statutory requirement that the Permit Board consider these factors. The regulations require the Permit Board to consider factors such as: public water supply, air quality, location of residential areas, property line setbacks, aesthetics and visibility, transportation, and noise. Thus, as the Commission found, Hinds County's hardship concerns are better suited for review before the Permit Board. *See **Titan Tire of Natchez***, 891 So. 2d at 200 (citing ***Weems***, 653 So. 2d at 273) (This Court gives great deference to an administrative agency's interpretation of its own regulations.). This issue is without merit.

**III.     WHETHER MADISON COUNTY VIOLATED ITS STATUTORY REQUIREMENT FOR CONSIDERATION OF PUBLIC COMMENTS.**

¶25. Mississippi Code Section 17-17-227(5)(a) (Rev. 2003) requires the Board of Supervisors of a county seeking to amend its waste-management plan to provide public notice and at least one public hearing concerning the plan. Because the Commission had concerns about Madison County's first issuance of notice, the Commission ordered Madison County to conduct another hearing. The hearing was conducted in November 2003, and the Board of Supervisors approved the plan again. Prior to the second public hearing, in January 2003, Madison County entered into a host-fee agreement with Bilberry. Hinds County

12

argues that, because of the host-fee agreement, Madison County contractually obligated itself to amend its waste-management plan prior to the end of the public comment phase of the amendment process and, therefore, violated its statutory obligation under Section 17-17-227(5)(a).

¶26. In an affidavit submitted to the Commission, Madison County Supervisor Karl Banks testified that "[t]he Agreement did not bind the Board to vote to amend the Plan." Supervisor Banks also stated that "[t]he Board has never considered itself bound to amend the Plan to include the Bilberry Property until it has fully considered the issues."

¶27. Madison County Supervisor Timothy Johnson also addressed the host-fee agreement in his affidavit, stating that:

> The opponents to the Board's action in amending the Plan to the Bilberry Property have asserted that the Host Fee Agreement prevented the Board from properly evaluating and considering the position of the opponents to the Amendment. I do not agree. The newly elected Board of Supervisors for Madison County considered and debated the Amendment to the Plan at its April 16, 2004 meeting. *The Board did not consider that it was required to approve the Amendment to add the Bilberry Property because of the Host Fee Agreement. As elected representatives of the people, the Board was not bound to vote to amend the plan.*

(Emphasis added.)

¶28. The Commission requested that the Board vote on the plan again when new members of the Board were elected in January 2004. At this time, the Board voted three-to-two to amend the plan. This vote was subsequent to the host-fee agreement and was the only time the plan was not unanimously approved by the Board. The dissenting votes indicate that the Board members did not feel obligated to approve the plan.

¶29.   The Commission considered the issue of whether the amendment process was prejudiced by the host-fee agreement and found that "Madison County's review of the proposed amendment was consistent with state law and regulations of this Commission." The Commission noted that Madison County had received public comment in November 1998, February 1999, March 1999, October 2002, and November 2003. Madison County had entered into the host-fee agreement in January 2003. The Commission also considered Supervisor Johnson's testimony that he did not feel obligated to approve the plan in light of the host-fee agreement.

¶30.   The Commission was presented with conflicting evidence regarding the host-fee agreement and found that the agreement did not prejudice the Board's vote. Considering the Board members' testimony, the dissenting votes in the final vote by the Board, and the public hearings held before the host-fee agreement, we find that the Commission's findings were supported by substantial evidence and not arbitrary or capricious.[6] *Miss. Comm'n on Envtl. Quality v. Chickasaw County*, 621 So. 2d 1211, 1215 (Miss. 1993). Accordingly, we find that this issue is without merit.

   **IV.   WHETHER THE LANDFILL VIOLATES THE CONCEPT OF ENVIRONMENTAL JUSTICE.**

---

   [6] Substantial evidence is "more than a mere scintilla of evidence" or "something less than a preponderance of the evidence but more than a scintilla or glimmer." *Weems*, 653 So. 2d at 280-81(citations omitted). An action is arbitrary or capricious "if the agency entirely failed to consider an important aspect of the problem, or offered an explanation for its decision that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of the agency expertise." *Id.* at 281 (citations omitted).

¶31. In his affidavit, Mark Williams, Administrator of the Solid Waste Policy, Planning and Grants Branch of MDEQ's Office of Pollution Control, stated that the United States Environmental Protection Agency, defined "environmental justice" as "ensur[ing] the fair treatment and meaningful involvement of all people, regardless of race, color, national origin, or income with respect to the development, implementation, and enforcement of environmental laws, regulations, and policies. *See Notices, Environmental Protection Agency, Office of Environmental Justice Hazardous Substances Research Small Grants Program – Application Guidance for FY 2004*, 69 Fed. Reg. 9618-01, 2004 WL 367510 (Mar. 1, 2004).

¶32. Hinds County argues that the Bilberry landfill will violate environmental justice because there are eight African-American families living near the landfill and the landfill's adjacent location to an existing landfill will cause the area to become the "landfill capital of Mississippi."

¶33. The opportunity for meaningful public involvement is the most important consideration in an environmental justice review, and the public had multiple opportunities for input in today's case. S*ee generally **Golden Triangle Reg'l Solid Waste Mgmt. Auth.**,* 722 So. 2d at 655-56 (discussing public comment phase of MDEQ permit application).

¶34. In addition to holding multiple public hearings, Madison County also hired an environmental firm to conduct an environmental justice review of the propose landfill. The firm considered the demographics of the area as part of its evaluation. Ultimately, the environmental firm concluded that:

15

Based upon the relatively minor impact on the area and taking into consideration the geology of the area, the subject property would provide an excellent choice for a solid waste disposal facility. Additionally, at present there is an existing solid waste disposal site which indicates that the sitting criteria for such a facility could be met. Our evaluation of the subject property in relation to current regulations promulgated by MDEQ indicates that this site could be permitted and that *the actions taken fully comply with environmental justice goals.*

(Emphasis added.)

¶35.    The Commission considered the testimony of the residents opposing the landfill and the information presented by the environmental firm. The Commission found that Madison County had done a preliminary environmental justice review and that the Permit Board would perform a more in-depth review. S*ee* Miss. Code Ann. § 17-17-229 (Rev. 2003). The Commission also noted that Madison County is not required to perform an in-depth environmental justice review.

¶36.    We find today that the Commission properly considered the issue of environmental justice and correctly concluded that this issue will also be considered by a more in-depth review of the Permit Board. ***Titan Tire of Natchez***, 891 So. 2d at 200 (This Court will defer to an agency's interpretation of a statute that it is responsible for administering as long as it is reasonable.). Although Madison County considered the issue of environmental justice, the concept of environmental justice also fits within the criteria that the Permit Board must consider – rather than Madison County or the Commission. Miss. Code Ann. § 17-17-229 (Rev. 2003). Like its appeal of the issue of hardship, Hinds County's appeal of this issue is premature. Thus, we find that this issue has no merit.

**CONCLUSION**

16

¶37. The Mississippi Commission on Environmental Quality did not err in approving the amendment to Madison County's solid-waste-management plan. The Commission does not have an independent statutory duty to find need. Also, the Commission properly determined that the issues of hardship and environmental justice will be examined in-depth before the Permit Board, and it correctly found that the host-fee agreement did not affect Madison County's approval of the amendment. Madison County did not violate its statutory requirement to consider public comments. Accordingly, this Court affirms the judgment of the Chancery Court for the First Judicial District of Hinds County, which judgment affirmed the Commission's order approving Madison County's waste-management plan.

¶38. In the chancery court order, Judge Lutz ordered and adjudged, *inter alia*, that: "Order No. 5058-05 of the Commission entered on August 25, 2005 be, and it hereby is, affirmed and remanded to the Commission for enforcement." Having affirmed the chancery court order, we now remand this case to the Chancery Court for the First Judicial District of Hinds County with a directive to enter an order remanding this case to the Mississippi Commission on Environmental Quality for further proceedings consistent with this opinion.

¶39. **AFFIRMED AND REMANDED.**

**WALLER, C.J., DICKINSON, P.J., RANDOLPH, LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR.**

17