MAXWELL, J.,
for the Court: .
¶ 1. Under Mississippi’s Air and Water Pollution Control Law, “it is unlawful for any person to cause pollution of any waters of the state or to place or cause to be placed any wastes in a location where they are likely to cause pollution of any waters of the state” unless that person has a permit. Miss.Code Ann. § 49-17-29(2) (Rev.2012). And because dirt work produces sediment — a pollutant that could potentially run off in state waters — state environmental regulation requires a permit to disturb more than five acres of land through activities like clearing, grading, and excavating.[1]
¶ 2. Morris Gray disturbed seven acres near the Pearl River through extensive dirt work without first obtaining the required permit. And he persisted in these activities, even after being- warned that doing so would further violate the law. In all, the Mississippi Commission on Environmental Quality (Commission) found Gray violated section 49-17-29(2) on five separate occasions and fined Gray $12,500 per violation.
¶ 3. On appeal, the Commission’s decision is presumptively valid unless rebutted by Gray. And here Gray has failed to articulate — let alone prove — why the Commission’s decision should be overturned. The record shows the Commission supported its decision with' substantial evidence — namely, testimony from engineers who observed the violations, along with supporting documents. Further, the penalty the Commission imposed was well within the statutory maximum of $25,000 *958 per violation.[2] We affirm.
Background Facts and Procedural History
I. Failure to Obtain State Permit
¶4. Gray owns thirteen acres on the east bank of the Pearl River in Rankin County. The land is underneath the flyover bridge at Interstate 55 and Highway 80. On September 23, 2008, an engineer with the Mississippi Department of Environmental Quality (MDEQ) saw construction activities taking place on Gray’s property. On closer inspection, the inspector noticed seven acres of Gray’s property were undergoing heavy dirt work. But when the engineer checked the MDEQ database, he found no work permits had been issued for this site.
¶ 5. Three weeks later, the MDEQ sent Gray a notice-of-violation letter. This letter informed Gray it was unlawful to dispose of wastes that may be discharged into state waters without a storm-water permit. See Miss.Code Ann. § 49-17-29(2). Sediment is one such waste. So when a project like Gray’s involves clearing, grading, or excavating activities on more than five acres, a permit ensures the amount of sediment leaving the construction site is minimized through a Storm Water Pollution Prevention Plan (SWPPP). See Miss. Admin. Code 11-6:1.1.1(B)(3) (incorporating by reference 40 C.F.R. § 122.26). The MDEQ told Gray he needed such a plan. He also needed to place controls on his property immediately to keep sediment from leaving his site.
II. Failure to Obtain Federal Permit
¶ 6. Two weeks later, Gray submitted an application for a storm-water permit, along with a proposed SWPPP, drafted by Gray’s engineering consultant. Gray claims the MDEQ intentionally delayed his application. But the MDEQ insists any delay was due to the federally protected wetlands on Gray’s property. The MDEQ told Gray he had to involve the United States Army Corps of Engineers to see if a wetlands permit was needed. And only after the Corps made its determination would the MDEQ continue with Gray’s state application. Until then, the MDEQ warned Gray that any unpermitted land-disturbing construction activities would violate the law.
¶7. Ultimately, the Corps determined Gray violated the federal Clean Water Act by filling in two-and-a-half acres of wetlands without first obtaining a federal permit. The Environmental Protection Agency (EPA) consequently stepped in and imposed a restoration order.
III. Continued Violations of State Law
¶ 8. An MDEQ inspector revisited the site in November 2008. And he noticed the land had recently been disturbed. So MDEQ sent another notice-of-violation letter. This time, the letter also included an invitation to an administrative conference to discuss Gray’s violations and a potential resolution. While Gray attended the conference and considered MDEQ’s settlement offer, ultimately the matter was left unresolved.
¶ 9. MDEQ inspectors visited Gray’s site three more times in February, March, and April 2009. During each visit, the inspector noticed new disturbances and dump trucks entering and leaving Gray’s property.
IV. Commission Hearing
¶ 10. The MDEQ notified Gray the Commission would hold a hearing on Gray’s multiple violations. This hearing *959 took place on November 18, 2010. Gray represented himself at the hearing and called his engineering consultant as a witness. The MDEQ called the three engineers who had inspected Gray’s property. It also submitted photographs and other evidence documenting Gray’s violations.
¶ 11. The Commission determined Gray had violated the law by constructing on his property without a permit and by continuing to dump fill material on his property even after the MDEQ warned him that to do so would violate the law. Each violation carried a potential penalty of up to $25,000. Miss.Code Ann. § 49-17-43(1) (Rev.2012). After considering the relevant penalty factors, the Commission assessed Gray $12,500 for each of the five days MDEQ observed a violation. See Miss. Code Ann. § 49-17-43(7).
¶ 12. Gray appealed the Commission’s decision to the Rankin County Chancery Court, which affirmed. Gray then appealed to this court.[3]
Discussion
¶ 13. In reviewing an agency’s decision, our role is limited. We may overturn the Commission’s decision only if it (1) was not supported by substantial evidence, (2) was arbitrary and capricious, (3) was beyond the Commission’s power to make, or (4) violated Gray’s statutory or constitutional rights. Hinds Cty. v. Miss. Comm’n on Envtl. Quality, 61 So.3d 877, 881 (¶ 10) (Miss.2011) (citation omitted). “There is a rebuttable presumption in favor of the [Commission’s] actions[.]” Id. And Gray, as “the challenging party[,] has the burden of proof to rebut the presumption.” Id.
¶ 14. We find Gray has not met this burden. His brief merely lobs unsupported accusations against the Commission. It neither cites relevant authority nor record facts. For this reason, the Commission asks this court to find Gray’s appeal procedurally barred. See M.R.A.P. 28(a)(6) (requiring the briefs argument to contain citations to the relevant authorities, statutes, and parts of the record); see also Byrom v. State, 863 So.2d 836, 853 (¶ 35) (Miss.2003) (holding that unsupported allegations on appeal are procedurally barred); Berry v. State, 859 So.2d 399, 407 (¶ 32) (Miss.Ct.App.2003) (holding that, when authority is not cited, the appellate court is under no duty to consider arguments of error). We do note one procedural bar, but find it just as expedient to address the merits of this case, which overwhelmingly favor the Commission.
I. Commission’s Finding of Five Violations
¶ 15. Under Mississippi’s Air and Water Pollution Control Law, “it is unlawful for any person to cause pollution of any waters of the state or to place or cause to be placed any wastes in a location where they are likely to cause pollution of any waters of the state” unless that person has the appropriate permit. Miss.Code Ann. § 49-17-29(2). According to the Commission, one way to violate this law is to create sediment during construction activities and to place that sediment where it is likely to run off into and pollute state waters. Consequently, the Commission has promulgated regulations for when a construction project must obtain a permit. The relevant regulation requires a storm-water permit for any construction project that will disturb more than five acres of *960 land. Miss. Admin. Code 11 — 6:1.1.1(B)(3) (incorporating by reference 40 C.F.R. § 122.26).
¶ 16. Gray does not challenge the validity of the statute or regulation. He merely argues the MDEQ failed to meet its burden of proof. But the undisputed evidence from the Commission hearing showed Gray disturbed seven acres of land. MDEQ engineer Derek Milner visited Gray’s property in November 2008. He walked Gray’s property with a global-positioning-satellite unit, confirming Gray’s dirt work exceeded the five-acre threshold by two acres. So by regulation, to avoid violating section 49-17-29(2), Gray had to first obtain a storm-water permit, something he undeniably did not do. Thus, his unpermitted land-disturbing construction activities were a clear violation of section 49-17-29(2).
¶ 17. The MDEQ saw Gray violate section 49-17-29(2) on five separate occasions. Steve Bailey, chief of the MDEQ’s Environmental Compliance and Enforcement Division, was the first to inspect Gray’s property in September 2008. Bailey frequently drove by the site and became concerned when he noticed dump trucks loading and unloading on the property, which Bailey knew was in a wetlands area. Bailey testified that when he stopped at the site, he found a huge amount of fill material. And his testimony was corroborated by photographs showing large piles of disturbed dirt adjacent to wetlands and no efforts to install storm-water controls at the site. The MDEQ also submitted letters from the Corps of Engineers and the EPA about the related federal violations.
¶ 18. Milner then visited the site in November 2008 and noticed more land-disturbing activities had occurred since Bailey’s visit. Milner made three other visits to the site — in February, March, and April 2009. And during each visit, he observed dump trucks entering the site with fill materials and leaving empty. At no time did Gray have a permit for any of these activities.
¶ 19. Gray suggests the MDEQ purposefully delayed approving his application and, in doing so, “did not follow the proper procedure.” We find this argument procedurally barred. Gray does not cite any procedure the MDEQ allegedly did not follow, leaving us without any way to evaluate his argument. See Berry, 859 So.2d at 407 (¶ 32). Also, the record shows the MDEQ promptly responded to Gray’s application, informing him its hands were tied until the Corps of Engineers and EPA resolved Gray’s federal violations.
¶20. From this, we find substantial evidence supported the Commission’s finding that Gray had violated the Clear Air and Water Pollution Control Law on five separate occasions.
II. Commission’s Imposed Penalty
¶21. By statute, each violation carries “a civil penalty of not more than Twenty-five Thousand Dollars ($25,000).” Miss.Code Ann. § 49-17-43(1). “[S]uch penalty [is] assessed and levied by the [CJommission after a hearing.” Id. And in determining the amount of the penalty, the Commission must consider, at a minimum, the seven factors listed in section 49-17-43(7).
¶22. After conducting a hearing and considering the relevant factors, the Commission assessed Gray $12,500 per violation ($62,500 total) as an appropriate penalty.
¶ 23. Gray suggests the MDEQ had to prove actual environmental damage to assess him the $62,500 penalty. But Gray fails to cite any relevant authority to supports this notion. To the contrary, we have held “[n]o evidence of actual harm to *961 the environment ... need be established by the 'MDEQ” in order to impose a civil penalty. Barrett Refining Corp. v. Miss. Comm’n on Envtl. Quality, 751 So.2d 1104, 1128 (¶ 100) (Miss.Ct.App.1999) (citing Chevron v. Yost, 919 F.2d 27, 29 (5th Cir.1990)).
¶ 24. The Commission does have to consider “[a]ny damage to air, water, land or other natural resources” when assessing a penalty. Miss.Code Ann. § 49-17-43(7)(b).. But it also must consider “[t]he willfulness' of the violation” and “[p]ast performance history.” Miss.Code Ann. § 49-17-43(7)(a), (f). And here, the MDEQ showed Gray had continued his construction activities at the site even though he had been warned by the MDEQ he was in violation. We cannot overlook that Gray had obtained the proper permit for a previous project. So his failure to obtain a permit for this land work could not be attributed to ignorance or confusion’ about the permit requirement. With these factors in mind, the Commission deemed it appropriate to assess him half the statutory maximum, or $12,500 per violation.
¶25. Because the penalty was well within the Commission’s authority and supported by substantial evidence of willfulness on Gray’s part, we affirm.
¶26. THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND WILSON, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.

. Miss. Admin. Code 11-6:1.1.1(B)(3) (incor-poratirig by reference 40 C.F.R § 122.26).

. See Miss.Code Ann. § 49-17-43(1) (Rev. 2012).

. By statute, an appeal of a Commission decision is made in the chancery court of either the county where the Commission hearing was held or, in this case, the county where the violation occurred. Miss.Code Ann. § 49-17-41 (Rev.2012). The appeal then "may be taken from the chancery court to the Supreme Court.” Id.